IN THE
UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
SPRINGFIELD DIVISION

BRODERICK RISPER,

    Plaintiff,

v.

Case No. 3:24-cv-03092-JEH

LATOTA HUGHES, *et al.*

    Defendants.

### Order

Plaintiff, proceeding pro se and presently incarcerated at Western Illinois Correctional Center, brought the present lawsuit alleging a claim pursuant to the Religious Land Use and Institutionalized Persons Act, 42 U.S.C. § 2000cc–1(a), and a First Amendment free exercise claim pursuant to 42 U.S.C. § 1983. The matter comes before this Court for ruling on the Defendants' Motion for Summary Judgment. (Doc. 20). For the reasons stated, *infra*, the motion is granted in part and denied in part.

### I

Summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). All facts must be construed in the light most favorable to the non-moving party, and all reasonable inferences must be drawn in his favor. *Ogden v. Atterholt*, 606 F.3d 355, 358 (7th Cir. 2010). The party moving for summary judgment must show the lack of a genuine issue of material

fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). In order to be a "genuine" issue, there must be more than "some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

## II

Plaintiff has been incarcerated at Western Illinois Correctional Center ("Western") since December 29, 2021. UMF 1. Defendants worked at the facility in the following capacities: Defendant Greene was the warden; and, Defendant Llewellyn was the chaplain. UMF 3, 4.

Plaintiff practices the Baptist faith. UMF 7. As part of his religious practice, he obtained a chain and a religious medallion while incarcerated at Menard Correctional Center. UMF 5. Plaintiff testified that the medallion depicted the "Virgin Mary, Mother of Jesus," which he has "always recognized as a symbol of my Christian religion." Pl.'s Dep. 15:21; (Doc. 25 at 2). Because Menard officials would not permit Plaintiff to wear the chain and medallion on the transfer bus, he placed the items in his property box in preparation for his transfer to Western. Pl.'s Dep. 12:10-15.

The applicable rules[1] permit inmates to possess "up to two traditionally accepted religious symbols or religious symbols which have been authorized by the Religious Practice Advisory Board and which represent their designated

---

[1] Defendants reference rules in a facility handbook. UMF 10. Defendants did not provide a copy of that handbook, and Defendant Llewellyn's recitation of the contents of that handbook is not admissible. Fed. R. Evid. 802. Therefore, the Court's reference to the applicable rules is limited to the Illinois Administrative Code. Fed. R. Civ. P. 56(c)(4).

faith," including medals, medallions, scapulas, or prayer beads. 20 Ill. Admin. Code § 425.90. Officials maintain authority to prohibit otherwise permissible items they deem a threat to safety or security. *Id.* § 425.90(c). Medals or medallions must comply with size requirements, may not exceed a designated value, may not contain precious gems or stones, and "shall not be of a design that could be used as a weapon or to conceal contraband." *Id.*

The medallion and chain were not in Plaintiff's property box when he retrieved it at Western. UMF 11. Defendant Llewellyn refused to authorize Plaintiff's possession of the medallion and chain in July 2022 because he opined that the medallion depicted an image traditionally associated with the Catholic, not Baptist, faith. UMF 12; Pl.'s Dep. 37:13-14. When he had ordered it, Plaintiff was unaware of the medallion's association with Catholicism. UMF 15. Plaintiff voluntarily exchanged the medallion for a cross in August 2022; he did not seek Defendant Llewellyn's permission prior to doing so. UMF 13, 14. Defendant Llewellyn initially denied Plaintiff's possession of the cross. UMF 14.

Plaintiff met with Defendant Llewellyn on December 6, 2022, where they discussed the medallion and Defendant Llewellyn's offer to assist Plaintiff if Plaintiff desired to convert to Catholicism. UMF 15, 16. Plaintiff declined the latter. UMF 16. Regarding the cross, Plaintiff testified that Defendant Llewellyn stated that "everybody was wearing the chains for show…and he said that I would have to attend his service for at least five months and then he'll approve [the cross]." Pl.'s Dep. 36:18-22. Plaintiff complied, and Defendant Llewellyn sent him written approval for the chain and cross. UMF 17. Plaintiff never received the items. UMF 18.

Prison staff eventually destroyed chain and cross. *Id.* A non-defendant prison official approved Plaintiff's possession of the cross and offered to reimburse him for the one that was destroyed. UMF 19.

### III

### A

The Religious Land Use and Institutionalized Persons Act ("RLUIPA") prohibits governmental imposition of a "substantial burden on the religious exercise" of a confined individual, even if the burden results from a rule of general applicability, unless the burden "(1) is in furtherance of a compelling governmental interest; and (2) is the least restrictive means of furthering that compelling governmental interest." 42 U.S.C. § 2000cc–1(a).

In establishing a claim under RLUIPA, the plaintiff bears the initial burden of showing (1) that he seeks to engage in an exercise of religion; and (2) that the challenged practice substantially burdens that exercise of religion. 42 U.S.C. § 2000cc–2(b). Once the plaintiff establishes this *prima facie* case, the burden shifts to the government to show that the policy in question was the least restrictive means to further a compelling government interest. *Holt v. Hobbs*, 574 U.S. 352, 135 S. Ct. 853, 863 (2015).

"Religious exercise" under RLUIPA includes "any exercise of religion, whether or not compelled by, or central to, a system of religious belief." 42 U.S.C. § 2000cc-5(7)(A). Governmental action substantially burdens religious exercise when the inmate is forced to "engage in conduct that seriously violates his religious beliefs," regardless of whether other religious accommodations offset the

burden imposed.[2] *Holt*, 135 S. Ct. at 862 (quoting *Burwell v. Hobby Lobby Stores, Inc.*, 134 S. Ct. 2751, 2775 (2014)); *Jones v. Carter*, 915 F.3d 1147, 1150 (7th Cir. 2019).

Once the burden shifts, RLUIPA requires courts to examine the application of the challenged practice "to the person." *Holt*, 135 S. Ct. at 863. Officials must explain why they denied the plaintiff an exemption and show that such a denial is the least restrictive means in furtherance of a compelling government interest. *Id.* at 364. The least-restrictive-means standard "requires the government to show that it lacks other means of achieving its desired goal without imposing a substantial burden on the exercise of religion by the objecting party." *Id.* (citations omitted). If less restrictive means are available, "the Government must use [them]." *Id.*

RLUIPA does not require prisoners to limit their religious exercise to items traditionally associated with their designated faiths. *See* 42 U.S.C. § 2000cc-5(7)(A). Plaintiff's affiliation with the Baptist faith and his sworn statements that he believed the medallion symbolized this faith are sufficient to permit a reasonable inference that he sought to engage in a religious exercise and that his beliefs were sincerely held. *Schlemm*, 784 F.3d at 365 (Plaintiff's testimony that denial of game meat for religious ceremony imposed substantial burden was sufficient where "the record was not so lopsided as to permit that contention's rejection on summary judgment.").

---

[2] *Holt* and *Hobby Lobby* redefined "substantial burden" under RLUIPA. Prior to these decisions, courts interpreted "substantial burden" for RLUIPA purposes as "one that necessarily bears direct, primary, and fundamental responsibility for rendering religious exercise…effectively impracticable," which was consistent with the standard applied in First Amendment cases. *Schlemm v. Wall*, 784 F.3d 362, 364 (7th Cir. 2015); *see also Nelson v. Miller*, 570 F.3d 868, 876 (7th Cir. 2009) (RLUIPA has been "interpreted with reference to Supreme Court free exercise jurisprudence."). *Holt* and *Hobby Lobby* "articulated a standard much easier to satisfy" than the "effectively impracticable" standard. *Schlemm*, 784 F.3d at 364; *see also Jones*, 915 F.3d at 1149.

Defendant Llewellyn's denial of the medallion, his apparent attempt to condition receipt of the item upon Plaintiff's conversion to Catholicism, and his requirement that Plaintiff attend services[3] for an extended period before approving the necklace and cross permit a reasonable inference that Defendant Llewellyn's actions forced Plaintiff to choose between possession of the items and practicing his faith. Viewed in the light most favorable to Plaintiff, the record permits a reasonable inference that officials substantially burdened his religious practice. *Jones*, 915 F.3d at 1150 (forcing a prisoner to choose between adequate nutrition and religious practice imposed a substantial burden).

The existence of rules and prison officials' desire to enforce them is not a compelling government interest under RLUIPA. *Schlemm*, 784 F.3d at 365. The statute requires prison officials to change the rules to accommodate sincerely held religious beliefs, and Defendants' argument that the rules prohibited Plaintiff's possession of the medallion and cross does not support a finding that they are entitled to summary judgment. *Id.* Defendants have not offered any evidence showing that the chain and medallion posed a safety and security risk, and the fact that Defendant Llewellyn's denials hinged on factors not associated with those interests negates an inference to that effect. Defendants have not otherwise presented any argument or evidence showing why they could not accommodate the medallion. Defendants are not entitled to judgment as a matter of law on Plaintiff's RLUIPA claim.

B

The Court's Merit Review Order also found that Plaintiff stated a First Amendment Free Exercise claim against Defendant Llewellyn and a John Doe

---

[3] The record does not disclose the religious affiliation of the services Defendant Llewellyn forced Plaintiff to attend.

prison official based on the alleged confiscation of the medallion. Plaintiff did not identify the John Doe official within the deadlines set forth in the Court's Scheduling Order, and, therefore, this defendant is dismissed without prejudice. *See* (Doc. 18 at 4, ¶ 9).

Federal courts must avoid making unnecessary constitutional decisions. *Koger v. Bryan*, 523 F.3d 789, 801 (7th Cir. 2008); *Miller v. Downey*, 915 F.3d 460, 463 (7th Cir. 2019). Plaintiff's First Amendment claim arises from the same conduct at issue in his RLUIPA claim. Because the statute affords greater protection, the Court finds that Plaintiff's First Amendment claim is moot. *See Koger*, 523 F.3d at 801 ("Because the prison officials are liable under RLUIPA for the conduct complained of in the constitutional claims, we decline to consider those latter claims."); *Schlemm*, 764 F.3d at 363 (bypassing prisoner's constitutional claims because RLUIPA provides greater protection); *Borzych v. Frank*, 439 F.3d 388, 390 (7th Cir. 2006) (declining to consider a prisoner's constitutional claims, and considering solely his RLUIPA claim after noting the heightened protection it offers).

C

Defendants argue that they are entitled to qualified immunity. Qualified immunity protects government officials "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (internal quotations and citations omitted). This defense is moot as it relates to Plaintiff's First Amendment claims.

RLUIPA does not authorize money damages against officials in their official or individual capacities. *Sossamon v. Texas*, 563 U.S. 277, 292 (2011) ("States, in accepting federal funding, do not consent to waive their sovereign immunity to

private suits for money damages under RLUIPA because no statute expressly and unequivocally includes such a waiver."); *Nelson*, 570 F.3d at 889 (damages not available under RLUIPA against defendants in their individual capacities). Because injunctive relief is the only relief available, Defendants are not entitled to qualified immunity on Plaintiff's RLUIPA claim. *Hannemann v. S. Door Cnty. Sch. Dist.*, 673 F.3d 746, 758 (7th Cir. 2012) ("[T]he defense of qualified immunity does not protect defendants from an action for injunctive relief.").

**THEREFORE:**

1) **Defendant John Doe is dismissed without prejudice. Clerk is directed to terminate this defendant.**

2) **Defendants' Motion for Summary Judgment [20] is GRANTED as to Plaintiff's First Amendment claim and DENIED as to any other relief requested.**

3) **This matter is referred to Magistrate Judge Hanna for a settlement conference. Clerk is directed to notify Judge Hanna's chambers of this referral. Judge Hanna's chambers will contact the parties to schedule the conference.**

4) **The Court will set a final pretrial conference, jury trial, and the associated deadlines, if necessary, after the settlement conference has occurred.**

*It is so ordered.*

Entered: December 8, 2025

s/Jonathan E. Hawley
U.S. District Judge